## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| NEIL BELSKY, | Civil No. 04-4702 (JRT/FLN) |
| Plaintiff, | |
| v. | |
| WORLDWIDE PARTS AND ACCESSORIES CORPORATION d/b/a WORLDPAC | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Jordan S. Kushner, **LAW OFFICE OF JORDAN S KUSHNER**, 431 South Seventh Street, Suite 2446, Minneapolis, MN 55415, for plaintiff.

Holly J. Tchida, **HINSHAW & CULBERTSON LLP**, 222 South Ninth Street, Suite 3100, Minneapolis, MN 55402, for defendant.

Plaintiff Neil Belsky and defendant Worldwide Parts and Accessories Corporation, d/b/a WORLDPAC have filed cross motions for partial summary judgment. In addition, Belsky moves to amend his complaint to add a claim for punitive damages. Defendant denied Belsky a job as a warehouse driver after defendant asked him to take a drug test, even though he passed the test. Belsky asserts claims of breach of contract and violation of Minnesota's drug testing statute. Belsky also alleges that defendant discriminated against him on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA") and the Minnesota Human Rights Act ("MHRA"). For the reasons

explained below, the Court grants both motions for partial summary judgment and the motion to amend.

## BACKGROUND

Defendant is a distributor of automotive parts and accessories. In March 2004, defendant accepted applications for positions in its new branch location in Minnesota. Neil Belsky, a 49 year-old white male, applied for one of eight available driver/warehouse positions. Defendant received 47 applications and selected 16 people for interviews.

Belsky interviewed with Gayle Mara, an employee in defendant's human resources department. At the interview, Mara gave Belsky a copy of the defendant's "Drug and Alcohol Testing Policy" and "Notice of WORLDPAC Drug Testing Procedures," and Belsky signed a form acknowledging receipt of these documents. Both documents state that a drug test will be administered after a job offer has been made.[1] After the interview, Mara asked Belsky to take a drug test, as she did with the other interviewed applicants for these positions. Belsky went across town and took a drug test that same day. Belsky interviewed on a Wednesday, and Mara told Belsky she would let

---

[1] The Drug and Alcohol Testing Policy provides that "all applicants will be required to take and pass a urinalysis screen in order to be eligible for employment. The test will be administered after a job offer has been made. Any offer of employment is contingent on successful passing of this drug test."

The Notice of WORLDPAC Drug Testing Procedure provides, "Consistent with WORLDPAC policy, all applicants must pass a urine test for the presence of drugs prior to employment. The test will be administered after a job offer has been made and any offer of employment is contingent on successful passing of this drug test."

him know on Monday "either way."  Because Mara asked Belsky to take a drug test, Belsky inferred that he had been offered a job, contingent on passing the drug test.  On Monday, Mara told Belsky that he passed the drug test but he was not selected for the job because she had filled all of the positions with other candidates.

Belsky filed an action in state court in September 2004.  Defendant removed to federal court in November 2004.  In November 2004, Belsky filed a charge of discrimination with the Minnesota Department of Human Rights and EEOC.  Defendant seeks summary judgment on Belsky's claims of breach of contract and age discrimination.  Belsky seeks summary judgment on his claim that defendant violated Minnesota's drug testing statute.  Belsky also seeks to amend his complaint to add a claim for punitive damages.

## ANALYSIS

### I.    Breach Of Contract

An offer that is "definite in form" that is communicated to the offeree can create a binding unilateral contract based on the outward manifestations of the parties.  *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 626 (Minn. 1983).  Plaintiff argues that he reasonably interpreted defendant's documents, providing that a request to take a drug test can only be made after a job offer has been made, to constitute a unilateral contract that he would have employment as long as he took and passed the drug test.

Plaintiff also argues that he should be able to pursue a claim based on promissory estoppel.  "A promise which the promisor should reasonably expect to induce action or

forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Restatement (Second) of Contracts § 90(1); *see Walser v. Toyota Motor Sales, U.S.A.*, 43 F.3d 396, 401 (8th Cir. 1994).

Based on defendant's actions, it was reasonable for Belsky to infer that defendant made him a job offer, contingent on him passing the drug test. Nevertheless, the offer was not definite, and therefore a unilateral contract was not created. Similarly, the Court concludes that defendant did not actually promise plaintiff a job, and therefore plaintiff's promissory estoppel claim fails.

Accordingly, the Court grants defendant's motion for summary judgment on plaintiff's breach of contract claims.

**II.     Age Discrimination**

Claims of age discrimination under the ADEA and the MHRA are analyzed under the familiar burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Haas v. Kelly Servs., Inc.*, 409 F.3d 1030, 1035 (8th Cir. 2005); *Dietrich v. Canadian Pac. Ltd.*, 536 N.W.2d 319, 323 (Minn. 1995) (holding that *McDonnell Douglas* applies to age discrimination claims under the MHRA). For plaintiff's failure to hire claim, he may establish a prima facie case of age discrimination by proving that (1) he belonged to the protected class; (2) he was qualified for the position for which he applied; (3) he was not hired for the position applied for despite his being sufficiently qualified; and (4) the employer finally filled the position with a person

sufficiently younger to permit an inference of age discrimination. *Schiltz v. Burlington N. R.R.*, 115 F.3d 1407, 1412 (8th Cir. 1997). If plaintiff makes a prima facie case, thus raising an inference of age discrimination, the burden of production then shifts to defendant to articulate a legitimate, nondiscriminatory reason for its decision not to hire him. *McDonnell Douglas*, 411 U.S. at 802. If defendant meets that burden of production, then plaintiff must prove that defendant's reason is merely a pretext for discrimination. *Id.* at 804.

It is unlikely that plaintiff can establish a prima facie case of age discrimination because it would be difficult for plaintiff to show that defendant filled the positions with persons "sufficiently younger" to permit an inference of age discrimination. Defendant hired eight persons as warehouse drivers at the end of March 2004, and three persons hired were within six years of plaintiff's age. One person was just one year younger than plaintiff.

Even if plaintiff could establish a prima facie case, defendant can offer a legitimate, non-discriminatory reason for not hiring plaintiff. *See McDonnell Douglas*, 411 U.S. at 802. The fact that other candidates were better qualified is a legitimate reason for not hiring a person. *Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 857 (8th Cir. 2003). Defendant asserts that plaintiff was not hired because of his lack of relevant work experience, inconsistent work history, and personality. For example, plaintiff had no driving experience since the age of 19 and no significant inventory control experience. He had long periods of unemployment, and Mara concluded from the interview that Belsky was not a "people person." Mara testified that the candidates she

picked had more warehouse and driving experience, and a history of being able to follow directions and work in a team environment.

Plaintiff offers no convincing evidence that defendant's proffered reason is a pretext. Plaintiff only points to the fact that defendant also failed to hire a 60 year old applicant. Defendant explains, however, that this applicant seemed reluctant to follow directions and required a climate-controlled atmosphere, which defendant could not provide.

Accordingly, the Court grants defendant's motion for summary judgment on plaintiff's age discrimination claims.

### III.   Minnesota Drug and Alcohol Testing in the Workplace Act

When employers seek to require job applicants to undergo drug testing, the matter is governed by the Minnesota Drug and Alcohol Testing in the Workplace Testing Act, Minn. Stat. §§ 181.950–.957 (2004) ("Workplace Testing Act"). The Workplace Testing Act was drafted with the express intent to provide constitutional protections for workers in the workplace. Rep. Sandra Pappas, *Workplace Drug Testing – House File 42*, 14 Wm. Mitchell L. Rev. 239, 239-43 (1988). According to the author of the legislation, "Our rights against self-incrimination, against unreasonable search and seizure, our right to be presumed innocent, as well as our common sense expectation of privacy are non-existent under an aggressive and invasive employer drug testing program." *Id*.

As such, Minnesota Statutes § 181.951 generally authorizes employers to "request or require" employees to undergo such testing, but, at the same time, imposes important

limits on that authority. *Law Enforcement Labor Servs. v. Sherburne County*, 695 N.W.2d 630, 635-36 (Minn. Ct. App. 2005). Subdivision 2 of section 181.951 provides that "[a]n employer may request or require a job applicant to undergo drug and alcohol testing provided a job offer has been made to the applicant . . . ." The statute further prohibits an employer from requiring "an employee or job applicant to undergo drug and alcohol testing on an arbitrary and capricious basis." Minn. Stat. § 181.951, subd. 1.

The defendant does not dispute that Mara requested plaintiff take a drug test in violation of Minnesota law and defendant's drug testing policies. Mara testified that notwithstanding defendant's drug testing policies, she changed the process because "[t]here was a lot of individuals to consider. So in the interests of saving time and efforts, we . . . interviewed a lot of people and chose more than we were going to hire." Defendant emphasizes that its violation of the drug testing statute is a "technical violation," and argues that plaintiff is not entitled to damages for the violation. The Court disagrees.

An employer that violates the drug testing statute "is liable to an employee or job applicant injured by the violation in a civil action for any damages allowable at law." Minn. Stat. § 181.956, subd. 2. At the very least, plaintiff suffered monetary damages from having to drive his car across town to take the test. Plaintiff also argues that he suffered emotional damages, but defendant argues that damages for emotional distress are not available under the Workplace Testing Act. The only case discussing damages under the Workplace Testing Act notes that the award of damages is discretionary with the

district court. *Follmer v. Duluth, Missabe & Iron Range Ry. Co.*, 585 N.W.2d 87, 95 (Minn. Ct. App. 1998).

Given the broad language authorizing damages in the Workplace Testing Act, the Court holds that emotional distress damages are available. *See, e.g.*, *Navarre v. S. Wash. County Sch.*, 652 N.W.2d 9, 30 (Minn. 2002) (holding that a plaintiff can recover emotional distress damages for violation of the Minnesota Government Data Practices Act where the statute provides a cause of action to a person "who suffers *any damage* as a result of the violation").

Accordingly, the Court grants plaintiff's motion for partial summary judgment against defendant for violation of the Workplace Testing Act. The amount of actual or emotional distress damages suffered by plaintiff is a jury question.

**IV.   Punitive Damages**

Plaintiff moves to amend his complaint pursuant to Minn. Stat. § 549.191 to request punitive damages for willful violation of the Workplace Testing Act. Punitive damages should be allowed where "the acts of the defendant show deliberate disregard for the rights . . . of others." Minn. Stat. § 549.20, subd. 1(a). A defendant acts with deliberate disregard for the rights of others if it knows or intentionally disregards facts that create a high probability of injury to the rights of others, and consciously or intentionally disregards the high probability of injury. Minn. Stat. § 549.20, subd. 1(b).

The first question is whether punitive damages are available under the Workplace Testing Act. As discussed above, the Workplace Testing Act uses broad language

authorizing damages. As such, the Court concludes that punitive damages are available under this statute. *See Bucko v. First Minn. Savings Bank, F.S.B.*, 471 N.W.2d 95, 97–98 (Minn. 1991) (upholding an award for punitive damages under the Minnesota Polygraph Statute, which permits "any and all damages recoverable at law").

The next question is whether plaintiff has presented prima facie evidence in support of the motion to amend.[2] Minn. Stat. § 549.191. Mara testified that she sent more applicants to take drug tests than she planned to hire "in the interests of saving time and efforts." She knew that this tactic violated defendant's drug testing policies. Her testimony also indicates that she understood that defendant's drug testing policies were based on the laws of the state, but it is unclear whether she willfully violated Minnesota law when she violated the company's policy. While the Court is skeptical that plaintiff can prove that defendant acted with the threshold level of culpability, plaintiff has a right to make the claim.

Accordingly, the Court grants plaintiff's motion to amend his complaint to add punitive damages.

This case will be placed on the Court's next available trial calendar.

---

[2] Defendant also argues that plaintiff's motion should be denied because it violates the scheduling order in this case. Plaintiff filed the motion to amend within a month of deposing Mara and discovering the facts underlying his claim for punitive damages, so the Court finds the motion timely.

**ORDER**

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Partial Summary Judgment [Docket No. 29] is **GRANTED**.

2. Plaintiff's Motion for Partial Summary Judgment [Docket No. 44] is **GRANTED**.

3. Plaintiff's Motion to Amend/Correct Amended Complaint [Docket No. 51] is **GRANTED**.


DATED: March 17, 2006            s/ John R. Tunheim
at Minneapolis, Minnesota.            JOHN R. TUNHEIM
                                                           United States District Judge